**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
RICHARD OWENS,                :
                              :   Civil Action No. 06-2109 (JAG)
         Plaintiff,           :
                              :
    v.                        :   **OPINION**
                              :
ROGER LEITH, et al.,          :
                              :
         Defendants.          :
_____:

**APPEARANCES:**

Plaintiff <u>pro se</u>
Richard Owens
Northern State Prison
168 Frontage Road
P.O. Box 2300
Newark, NJ 07114

**GREENAWAY, JR.**, District Judge

Plaintiff Richard Owens, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action <u>in forma pauperis</u>, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), this Court shall grant Plaintiff's application to proceed <u>in forma pauperis</u>, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the Complaint.

At this time, this Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief can be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  As discussed below, the Eighth Amendment excessive force claim and the Equal Protection claim will be allowed to proceed against defendant Richard Leith.  All claims against the State of New Jersey Department of Corrections will be dismissed with prejudice.  All other claims will be dismissed without prejudice for failure to state a claim.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

When Plaintiff previously was confined at Bayside State Prison, Correctional Officer Roger Leith asked him about his pending legal matters.  After Plaintiff, a white man, told CO Leith that Plaintiff was a victim of "racial profiling" because he "prefer[red] black women over white women," he (Leith) and other officers began to use racial slurs in reference to Plaintiff.  In addition, CO Leith entered Plaintiff's locker and destroyed some of Plaintiff's legal documentation and photos of himself with an African-American woman.  CO Leith then took Plaintiff to the mess area and beat him up while other officers served as "look-outs."

Plaintiff later was taken to the medical department, but the nurse there said she did not need to see Plaintiff if he was not bleeding.

Shortly after this incident, Plaintiff was transferred to South Woods State Prison, where Correctional Officer A. Soto told him that he knew all about what happened at Bayside, and he routinely cursed and threatened Plaintiff. On one occasion, CO Soto refused to process Plaintiff's request for indigent legal mail postage. Special Investigation Division ("SID") Officer E. Satys failed to investigate Plaintiff's complaints about CO Soto.

Plaintiff has named as defendants Correctional Officer Roger Leith, SID Officer E. Satys, Correctional Officer A. Soto, and the New Jersey Department of Corrections.

This Court construes the Complaint as asserting (1) Eighth Amendment excessive force claims against Officers Leith and Soto; (2) an Equal Protection claim against Officers Leith and Soto; (3) a claim against Officer Soto for interference with Plaintiff's right of access to the courts; and (4) a claim against SID Officer Satys for failure to investigate.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28

U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v.

4

Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)).

## III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States; and second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV. ANALYSIS

A. Eleventh Amendment

The Eleventh Amendment to the Constitution of the United States provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

For the foregoing reasons, all damages claims against the New Jersey Department of Corrections must be dismissed with prejudice.

B.   Eighth Amendment Excessive Force Claim

The Eighth Amendment prohibits punishments that are "cruel and unusual."  An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that

"'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  Hudson v. McMillian, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986):  "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Hudson, 503 U.S. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(quoting Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force is sufficiently "excessive" to rise to the level of a constitutional violation.

Plaintiff has pled facts sufficient to avoid dismissal of his Eighth Amendment excessive force claim against defendant CO Roger Leith.

However, Plaintiff fails to state a claim against CO Soto. As the Supreme Court of the United States has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society."  Hudson v. Palmer, 468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against calculated harassment.  Id. at 530.  Generally, however, mere verbal harassment does not give rise to a constitutional violation.  See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th

9

Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights).

Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)(verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Prisoners' Legal Association v. Roberson, 822 F. Supp. 185, 187-89 & n.3 (D.N.J. 1993) (corrections officer's use of racial slurs did not amount to constitutional violation).

Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him). On the other hand, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation. Douglas v. Marino, 684 F. Supp. 395, 398 (D.N.J. 1988) (brandishing a butcher knife in close proximity to prisoner and threatening to kill him may

10

amount to a constitutional violation); see also Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put gun to prisoner's head and threatened to shoot); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986) (while uttering racial epithets, guard pointed weapon at prisoner, cocked it, and threatened to shoot).  Here, Plaintiff reports only verbal harassment by CO Soto, which is insufficient to state a claim under the Eighth Amendment.

Finally, Plaintiff cannot obtain relief for mental or emotional injury in the absence of a physical injury.  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  See Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000).  The claim based upon verbal harassment by CO Soto must be dismissed.

C.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)); Artway v. Attorney General of New

Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping language "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim;  a plaintiff also must prove that the defendant intended to discriminate.  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor.  Village of Arlington Heights, 429 U.S. at 265-66.

Once this intentional disparity in treatment is shown, a court will proceed to determine whether the disparity can be justified under the requisite level of scrutiny.  See City of Cleburne, 473 U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Price v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert. denied, 465 U.S. 1032 (1984).

In testing the validity of state legislation or other official action that is alleged to deny equal protection, the "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  City of

12

Cleburne, 473 U.S. at 439-40.  The general rule gives way, however, when a statute classifies by race, alienage, or national origin;  these classifications "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."  Id. at 440.

The Equal Protection Clause protects prisoners from arbitrary racial discrimination.  Turner v. Safley, 482 U.S. 78, 84 (1987); Lee v. Washington, 390 U.S. 333 (1968).  The "strict scrutiny" standard of review applies to racial classifications in the prison context.  See Johnson v. California, 543 U.S. 499 (2005).

The Equal Protection Clause protects against official racial discrimination based upon involvement in an interracial relationship.  See Loving v. Virginia, 388 U.S. 1, 10 (1967).

"Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."  DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000).  See also Akins v. Kasheta, 2006 WL 2828821 (M.D. Pa. 2006) (same).  Thus, Plaintiff cannot state a claim against CO Soto based upon verbal harassment.  The contention that an assault by a prison guard is racially motivated, however, states an equal protection claim.  See Rossiter v. Andrews, 1997 WL 137195, *2

(E.D. Pa. 1997). Thus, the Complaint is sufficient to state an equal protection claim against CO Roger Leith.

D.   Access to Courts

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access

14

to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

    Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  <u>See</u> <u>Lewis</u>, 518 U.S. at 348-55 and n.3 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  ...  [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished

15

to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." <u>Bounds</u>, 430 U.S. at 824-25, <u>clarified on other grounds</u>, <u>Lewis v. Casey</u>, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." <u>Reynolds v. Wagner</u>, 128 F.3d 166, 183 (3d Cir. 1997).

Here, Plaintiff's allegation that CO Soto refused to mail his legal mail on one occasion, assuming that the legal mail involved a type of litigation constitutionally protected, but without any allegation that he suffered an injury from that refusal, is not sufficient to state a claim for violation of his right of access to the courts.

E.   <u>Failure to Investigate</u>

16

"'[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'" Graw v. Fantasky, 68 Fed. Appx. 378, 2003 WL 21523251 (3d Cir. 2003) (unpubl.) (quoting unpubl. District Court opinion) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)).  Cf. Burnside v. Moser, 138 Fed.Appx. 414, 416, 2005 WL 1532429 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process); Lewis v. Williams, 2006 WL 538546, *7 (D. Del. 2006) (failure to investigate a grievance does not raise a constitutional issue).

Moreover, here the alleged verbal harassment did not amount to a constitutional violation.  Hence, the failure to investigate could not amount to a constitutional violation, standing alone. This claim must be dismissed for failure to state a claim.


V.   CONCLUSION

For the reasons set forth above, the Eighth Amendment excessive force claim and the Equal Protection claim may proceed against Defendant CO Roger Leith.  All claims against the New Jersey Department of Corrections will be dismissed with prejudice.  All other claims will be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  However, because it is conceivable

that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies of his Complaint, this Court will grant Plaintiff leave to file an amended complaint.[1] An appropriate order follows.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  March 21, 2007

---

[1] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.